UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LANCE GARRETT BARTHOLOMEW                          CIVIL ACTION

VERSUS                                             NUMBER: 14-1468

ROLAND LADREYT, ET AL.                             SECTION: "J"(5)

### REPORT AND RECOMMENDATION

Presently before the Court is the Rule 12(b)(6) motion to dismiss or, alternatively, Rule 12(c) motion for judgment on the pleadings of Defendants, Warden Roland Ladreyt, Captain/Assistant Warden Alvin Robinson, Lieutenant Jessica Troxclair, Deputy Sheriff Kim Baugh, and Deputy Sheriff Jason Ardeneaux, all of the St. Charles Correctional Center/Nelson Coleman Correctional Center. (Rec. doc. 10). Plaintiff opposes Defendants' motion. (Rec. doc. 13). For the following reasons, it is recommended that Defendants' motion be granted and that Plaintiff's suit be dismissed.

Plaintiff is an inmate of the St. Charles Correctional Center/Nelson Coleman Correctional Center in Killona, Louisiana. Although his complaint is somewhat difficult to decipher, Plaintiff alleges that on May 10, 2014, he was placed in protective custody after other inmates requested that he be moved out of the dorm where he was housed based on his HIV status. Plaintiff alleges this change in his residential assignment resulted in his being placed in "extended lockdown" where he ". . . was unable to make any phone calls which subjected . . . [him] to discrimination and cruel and unusual punishment." (Rec. doc. 1, pp. 5-6). Plaintiff further alleges that on May 11, 2014 at approximately 10:00 a.m., he was not afforded an opportunity to call his attorney as he requested. (*Id.* at pp. 7-9). In his

prayer for relief, Plaintiff asks for an expeditious hearing on the matters of which he complains and his release from imprisonment; a jury trial and consequent award of monetary damages in the amount of three hundred thousand dollars; and, an investigation by the Department of Justice ("DOJ") with a possible takeover of the St. Charles Correctional Center/Nelson Coleman Correctional Center by that division of the executive branch. (*Id.* at p. 5).

It considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). However, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1949 (2009). The Court thus must identify pleadings that are conclusory and are not entitled to the assumption of truth and legal conclusions must be supported by the factual allegations that are pled. *Id.* at 677-78, 129 S.Ct. at 1949. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* While a complaint need not contain detailed factual allegations, it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me" accusation. *Id.* A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standards that are applicable to a Rule 12(b)(6) motion to dismiss. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209-10 (5th Cir. 2010).

Plaintiff gives no indication in his complaint of the capacities in which the named Defendants are being sued. "When a pro se plaintiff does not specify in his complaint

whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation of law that the defendant is named in his or her official capacity." *Douglas v. Gusman*, 567 F.Supp. 2d 877, 888-89 (E.D. La. 2008). "'In a suit brought against a municipal official in his [or her] official capacity, the plaintiff must show that the municipality has a policy or custom that caused his injury.'" *Carter v. Strain*, No. 09-CV-0015, 2009 WL 3231826 at *2 (E.D. La. Oct. 1, 2009)(quoting *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied*, 555 U.S. 813, 129 S.Ct. 42 (2008)). "'A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity.'" *Id.* (quoting *Colle v. Brazos County, Texas*, 982 F.2d 237, 245 (5th Cir. 1993)). Rather, the plaintiff ". . . must <u>identify</u> the policy or custom which allegedly caused the deprivation of his constitutional rights." *Id.* (citing *Murray v. Town of Mansura*, 76 Fed.Appx. 547, 549 (5th Cir. 2003) and *Treece v. Louisiana*, 74 Fed.Appx. 315, 316 (5th Cir. 2003)).

Measured against the foregoing standards, Plaintiff's allegations against the Defendants in their official capacity fail to state a claim upon which relief can be granted as he does not allege that the purported deprivation resulted from a policy or custom, much less identify any such policy or custom. *Carter*, 2009 WL 3231826 at *2. Moreover, the Court recalls the well-established principle that decisions respecting the classification and housing of inmates are entrusted to jail officials in the first instance. *Woods v. Edwards*, 51 F.3d 577, 581-82 (5th Cir. 1995). The Fifth Circuit has repeatedly affirmed that "'[p]rison officials should be accorded the widest possible deference' in classifying prisoners' custodial status as necessary 'to maintain security and preserve internal order.'"

*Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008)(quoting *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) and *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003)). "[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." *Pichardo v. Kinker*, 73 F.3d 612, 612-13 (5th Cir. 1996). "Segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hernandez*, 522 F.3d at 562-63 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995)).

Examples cited by the Fifth Circuit panel in *Hernandez*, *supra*, where segregated confinement was sufficiently "atypical" to implicate a due process liberty interest included *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005) which involved a "Supermax" facility where almost all human contact was prohibited. The prisoners at that facility were kept in single cells with solid metal doors that prevented communication from one cell to another; inmates were fed in their cells alone rather than in a common area; opportunities for visitation were rare and conducted only through glass walls; cell lights remained on at all times; placement in the facility was indefinite and, after an initial thirty-day review, was only reviewed annually; and, assignment to the facility disqualified an otherwise eligible inmate from parole consideration. And in *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 436 (5th Cir. 2003), a previous Fifth Circuit panel had noted that due process <u>might</u> have been violated where the plaintiffs had been kept on lockdown status for thirty years. As these cases illustrate, in general, inmates have no protectable property or liberty interests in their custodial classifications or placement within a particular jail facility. *Harper v.*

4

*Showers*, 174 F.3d 716, 717-19 (5th Cir. 1999)(no due process violation where inmate claimed he was placed in lockdown next to psychiatric patients who scream, beat on metal toilets, short out the power, flood the cells, throw feces, and light fires, resulting in his loss of sleep for days at a time; was often moved into filthy, sometimes feces-smeared cells that formerly housed psychiatric patients; and, was deprived of cleanliness, sleep, and peace of mind).

Plaintiff has failed to show how his placement in protective custody imposed an atypical or significant hardship beyond the ordinary incidents of prison life such that he was deprived of a cognizable liberty interest. *Fisher v. Wilson*, 74 Fed.Appx. 301 (5th Cir. 2003). Much like the plaintiff in *Bannister v. Deville*, 211 F.3d 593 (5th Cir. 2000), Plaintiff does not allege that he lost any good-time credits as a result in the change in his residential assignment ". . . but merely complains that he was transferred to an extended lockdown facility where he was not entitled to the privileges enjoyed by the general population." Even construing Plaintiff's allegations on Eighth Amendment grounds, he makes no showing that prison officials acted out of deliberate indifference to his health or safety. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Taylor v. Woods*, 211 Fed.Appx. 240, 241 (5th Cir. 2006); *Pittman v. Allison*, No. 08-CV-0328, 2010 WL 2736961 at *3 (S.D. Miss. July 9, 2010). "Deliberate indifference is established by showing that the defendant officials '(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.'" *Herman*, 238 F.3d at 664 (quoting *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)). "'Deliberate indifference' is a stringent standard of fault,

one which requires proof that a municipal actor disregarded a known or obvious consequence of his action." *Ford v. Gusman*, No. 11-CV-2950, 2012 WL 2567063 at *8 (E.D. La. May 11, 2012), *adopted*, 2012 WL 2567034 (E.D. La. July 2, 2012)(citing *Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391 (1997)).  It has been equated with "subjective recklessness" as that term is used in criminal law.  *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).

Notwithstanding Plaintiff's beliefs to the contrary, a review of the Administrative Remedy Procedure ("ARP") grievance forms attached to his complaint belie any credible claim of deliberate indifference on the Defendants' part.  In response to his inquiry about the change in his housing assignment, Plaintiff was told that his placement in protective custody was ". . . for his safety not punishment."  (Rec. doc. 1, p. 11).  In a subsequent response, a prison official recalled having "again" attempted to work with Plaintiff about his housing assignment but returning Plaintiff to the disciplinary tier after he was found guilty of causing a disturbance following his release into the general population.  (*Id.* at p. 12).  In yet another response to Plaintiff's step-three grievance, the Warden explained that Plaintiff was moved several times out of general population due to his ". . . inappropriate behavior with other inmates which resulted in them meaning to harm you, you were moved out of population because the inmate population held you in contempt because of the type of crime you are charge[d] with and again inappropriate sexual behavior," and [y]ou also have other disciplinary incidents," while impressing upon Plaintiff his ". . . best interest being our primary concern."  (*Id.*).  Cited with approval in *Hernandez, supra*, was the Seventh Circuit's decision in *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997)

wherein it was noted that non-disciplinary lockdown is by no means an atypical experience:

> [e]very state must have somewhere in its prison system single-person cells in which prisoners are sometimes confined not because they have misbehaved but simply because the prison has no other space, wishes to protect some prisoners from others, wishes to keep prisoners isolated from one another in order to minimize the risk of riots or other disturbances, wishes to prevent the spread of disease, and so forth.

*Hernandez*, 522 F.3d at 563.

The above-quoted language underscores the reasons why decisions respecting the classification and housing of inmates are accorded significant deference. The Court is hardly in a position to second-guess those decisions. The cases where segregated confinement was sufficiently "atypical" to implicate a due process liberty interest involved circumstances substantially harsher than those complained of by Plaintiff. *Hernandez*, 522 F.3d at 563. Neither due process nor Eighth Amendment violations have been established here.

The second incident raised by Plaintiff's complaint occurred on May 11, 2014 at 10:00 a.m. when his request to telephone his attorney was not honored. From a review of the grievance form attached to Plaintiff's complaint it appears that he was not intentionally denied the opportunity to call his attorney at the time of his choosing; rather, the attending deputy had every intention of allowing Plaintiff phone access according to the rotation schedule in place at the jail but simply became preoccupied and passed along Plaintiff's request to the night personnel. (Rec. doc. 1, pp. 13-14). The isolated incident of which Plaintiff complains thus appears to be the product of mere negligence which is not

actionable under §1983.  *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 664 (1986).  Assuming that there is a constitutional right to <u>some</u> telephone access, that right is not unlimited, *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982), and the Court is unaware of any authority establishing that prisoners have a right to use the telephone on whatever date and at whatever time they so choose.  At the third step of the ARP grievance process Plaintiff was advised that "[y]ou are allowed to make daily phone calls even while on lock down for severe disciplinary infractions.  In addition to what has been explained by Captain Whitney above, your attorney can call to speak to you or come to the facility 24 x 7 should they wish to do so."  (*Id.* at p. 14).  Plaintiff as much as acknowledges this arrangement in his statement of claim.  (*Id.* at p. 8).  Moreover, construing Plaintiff's allegations as a claim for denial of access to the courts, he makes no showing that his position as a ligant was prejudiced in any way.  *Whiting v. Kelly*, 255 Fed.Appx. 896, 898-99 (5th Cir. 2007); *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993).

      Finally, the Court turns to the various species of relief sought by Plaintiff.  His first form of requested relief, release from imprisonment, must be pursued on *habeas corpus* grounds after he has exhausted available state court remedies.  *See Preiser v. Rodriguez*, 411 U.S. 475, 111 S.Ct. 1827 (1973).  In his third form of relief, Plaintiff asks that the DOJ investigate and possibly take over the operation of the jail facility where he is housed.  Private citizens, however, do not have a constitutional right to have their complaints investigated by federal or local executive officials.  *Lovoi v. Federal Bureau of Investigation*, No. 99-CV-3563, 2000 WL 33671769 at *2 n. 4 (E.D. La. March 31, 2000).  That leaves before the Court Plaintiff's request for monetary damages.  Such, however, is foreclosed by

42 U.S.C. §1997e(e) as Plaintiff makes no allegation that he suffered a physical injury. *Herman*, 238 F.3d at 665-66.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Defendants' motion be granted and that Plaintiff's suit be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this  3rd  day of      December      , 2014.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE